**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANTHONY STEWART THIGPEN,

    Defendant.

CASE NO.: 2:15-cr-10

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Presently before the Court is the Government's Motion for Revocation of Defendant Anthony Stewart Thigpen's ("Thigpen") Pre-Trial Release, as supplemented. (Docs. 94, 99.) The Court conducted a hearing on this matter on July 1, 2015. For the reasons set forth below and stated on the record at this hearing, the Government's Motion is **GRANTED**, Thigpen's pretrial release is **REVOKED**, and Thigpen shall remain **DETAINED** until the resolution of the criminal proceedings against him. The undersigned **RECOMMENDS** that the $25,000 surety bond posted in this case be **FORFEITED** but that the entire $25,000 be **SET ASIDE** and the surety's bond be **EXONERATED**.[1]

---

[1] The authority of a Magistrate Judge to issue a final order regarding forfeiture of a bond is not settled. See United States v. Balbuena, No. 8:08-CR-271-T-27TGW, 2009 WL 87413, at *1 (M.D. Fla. Jan. 13, 2009). Accordingly, on the issue of forfeiture, a Report and Recommendation is being issued rather than an Order.

## BACKGROUND

In this action, Defendant is charged with conspiracy to possess with intent to distribute and distribute quantities of methamphetamine and oxycodone, in violation of 21 U.S.C. § 846, and distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Doc. 3.) On June 4, 2015, the Court entered an Order setting the conditions of Thigpen's pretrial release. (Doc. 23.) That Order set an Appearance bond in the amount of $25,000 to be secured by a solvent surety. (Id. at p. 1.) The Court also ordered, in relevant part, that Defendant: report for supervision by the United States Probation Office; not use a narcotic drug or other controlled substance, as defined in 21 U.S.C. § 802; submit to testing for a prohibited substance, if required by the United States Probation Office; be restricted to his residence except for specified activities; and submit to location monitoring. (Id. at p. 2.) On this same date, Thigpen signed an Appearance Bond and agreed to "comply with all conditions set forth in the Order Setting Conditions of Release." (Doc. 24, p. 1.) The Bond made it clear that, if Defendant did not fulfill that agreement, the bond and any security would be forfeited and the Court could "order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interests and costs." (Id.) Thigpen's bond was secured by Brenda Thigpen, his wife, as a third party surety. The Court arraigned Thigpen on June 8, 2015, at which time Thigpen's counsel requested that Brenda Thigpen be released as the third party surety and custodian to Thigpen and be replaced by his father, Joseph Thigpen. (Doc. 40.) The Court granted these requests. (Doc. 51.) The Court entered another Order setting the conditions of Thigpen's pretrial release, which was identical to the previous Order in all material respects. (Doc. 41.) Thigpen once again signed an Appearance Bond, as did his father, which set forth the same conditions as the previously-signed Appearance Bond. (Doc. 42.)

**I.     Alleged Violations of Pretrial Release**

In the Government's petition, the United States Probation Office alleged Thigpen violated several conditions of his pretrial release. Specifically, Fonda Dixon with the United States Probation Office asserted that Thigpen was directed to report to the Probation Office on June 22, 2015, to provide a urine specimen. The probation officer who collected Thigpen's specimen noticed clear tubing in Thigpen's crotch area and Thigpen "tugging suspiciously on his pants at the waistband." (Doc. 94, p. 1.) Thigpen would not comply with the officer's request to show him what was in his pants, but after questioning, Thigpen admitted to obstructing the drug test to which he had submitted and stated the tested substance was water and food coloring. Thigpen admitted taking methamphetamine on both of the two (2) days before this test, as well as to using Ativan on the previous day. (Id.) Thigpen provided an actual urine specimen, which yielded positive results for methamphetamine and benzodiazepine on a five-panel field test. (Id.) Ms. Dixon also asserted that she discovered Thigpen had left his home fifteen (15) minutes before being granted permission to do so on the Saturday before he came in to provide a urine specimen. In addition, Ms. Dixon stated she was alerted by the monitoring company on the day before Thigpen came to the Probation Office that Thigpen was out of range of his residence. When Ms. Dixon called Thigpen, he informed her he had gone to his father's house to get gasoline for his lawnmower. Ms. Dixon also stated Thigpen was reminded he did not have approved leave for that day. (Id. at p. 2.)

The United States Probation Office supplemented its Petition on June 30, 2015, and declared Thigpen was not complying with the location monitoring/home detention proviso, as directed. Of note, Ms. Dixon stated Thigpen did not return to his home on June 25, 2015, at the scheduled time. Ms. Dixon alleged Thigpen admitted to being at two (2) locations to which he

3

did not have permission to travel. Ms. Dixon stated she instructed Thigpen to charge the battery on the tracking device because a low battery alert had been generated. Ms. Dixon further stated Thigpen did not return home at his scheduled time on June 26, 2015, yet when she called Thigpen, he claimed he was home. Ms. Dixon directed Thigpen to text a picture of himself at home to Ms. Dixon, and Thigpen maintained he tried on two (2) occasions to do so but was unsuccessful. (Doc. 99, p. 1.) Ms. Dixon stated she was advised at 10:59 p.m. "the tracker had missed a callback. A message to charge the tracker was sent through the monitoring system . . . but the message was not delivered." (Id.) According to Ms. Dixon, the monitoring system showed that Thigpen "finally charged the battery at 4:37 a.m. on June 27, 2015. At the same time, a tracker restart was executed. An unauthorized enter was recorded at 4:42 a.m." (Id.) Finally, Ms. Dixon asserted Thigpen had an unauthorized leave of nearly twenty (20) minutes' time later that day.

At the hearing on this instant Motion, the United States Probation Office's Petition and Addendum were read. Defendant stipulated to all of the alleged violations of the conditions except the alleged violation regarding the text photograph. (Doc. 104.) The Government requested Thigpen be detained, whereas Thigpen requested placement at St. Illa for inpatient treatment.

The Court finds Thigpen violated the conditions of release previously imposed by the Court; is addicted to or abuses mood-altering chemicals and is likely to continue such conduct and violate the law if permitted to remain on pretrial release; was not truthful with the United States Probation Office during his pretrial supervision and therefore poses a substantial risk of noncompliance with supervision; and that conditions which restrict Thigpen's travel, personal contacts, and possession of drugs, alcohol, and/or firearms; require reporting, education,

4

employment, or treatment; or monitor Thigpen's movements or conduct; or any combination of these conditions or others currently proposed or available (see 18 U.S.C. § 3142(c)), will not sufficiently ameliorate the risks posed if Thigpen is allowed continued pretrial release. Accordingly, Thigpen's bond is hereby **REVOKED**.

Thigpen is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal, including his co-Defendants in this case. Thigpen must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Thigpen to the United States Marshal for a court appearance.

## II. Forfeiture

Having found that a condition of the Appearance Bond has been breached, pursuant to Federal Rule of Criminal Procedure 46(f)(1), the Court "must declare the bail forfeited." Fed. R. Crim. P. 46(f)(1). Forfeiture is triggered not just by a failure to appear but also by violations of other conditions. Brown v. United States, 410 F.2d 212, 218 (5th Cir. 1969).[2] Additionally, forfeiture results in liability not just as to the defendant but also as to any surety on the bond. See United States v. Vaccaro, 51 F.3d 189, 193 (9th Cir. 1995) (holding defendant and surety jointly and severally liable for forfeiture); United States v. Balbuena, No. 8:08-CR-271-T-27TGW, 2009 WL 87413, at *1 (M.D. Fla. Jan. 13, 2009). As described above, Defendant has

---

[2] The Eleventh Circuit Court of Appeals has adopted as binding decisions issued by the former Fifth Circuit Court of Appeals prior to September 30, 1981. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1210 (11th Cir. 1981).

repeatedly breached the express conditions of his release, and, therefore, his bond must be forfeited.

However, under Federal Rule of Criminal Procedure 46(f)(2), the Court may set aside a forfeiture in whole or in part if "it appears that justice does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2). Rule 46(f)(1) combines with Rule 46(f)(2) and (f)(4) to give district courts "virtually unbridled discretion" in remitting bond forfeiture. United States v. Gonzalez, 452 F. App'x 844, 845 (11th Cir. 2011). Factors that courts consider when assessing whether to set aside all or a portion of a forfeiture include: the defendant's willfulness in breaching release conditions; the amount of delay caused by the defendant's default; the surety's participation; the cost, inconvenience, and prejudice suffered as a result of the breach; any mitigating factors offered by the defendant; and whether the surety is a professional as opposed to a family member or friend. See United States v. Diaz, 811 F.2d 1412, 1415 (11th Cir. 1987); see also United States v. Nguyen, 279 F.3d 1112, 1115–16 (9th Cir. 2002).

Justice requires setting aside all of the forfeiture in this case. Thigpen's willfulness in breaching the conditions of his Bond cannot be overstated. Thigpen admitted to violating several conditions of this Court's Order directing his conduct while he was on pretrial release. In addition, while Thigpen's breach did not cause delay in the trial of this case, it resulted in cost and inconvenience to the Court and the Government. Nevertheless, Thigpen appeared to be truly contrite when admitting he violated the conditions of his pretrial release and desires much-needed treatment for his addiction. Further, Joseph Thigpen does not appear to be responsible for Thigpen's violations of his pretrial release conditions, and he certainly did not participate in Thigpen's admitted violations.

In light of the foregoing and the evidence received at the hearing, the Court should **SET ASIDE** $25,000 of the $25,000 forfeiture. The Bond should remain forfeited, and the surety's Bond should be otherwise **EXONERATED**.

**SO ORDERED** and **REPORTED AND RECOMMENDED**, this 2nd day of July, 2015.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA